UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE Y. WINFIELD | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 1:14-cv-12219-IT |
| | * |
| NEIL J. PEROCCHI, LAWRENCE | * |
| POLICE DEPARTMENT, and | * |
| MICHAEL FORNESI | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

July 22, 2015

TALWANI, D.J.

I.   Introduction

Plaintiff Marie Y. Winfield filed the instant action against Lawrence Police Officer Neil J. Perocchi, the Lawrence Police Department, and Michael Fornesi alleging state and federal law claims in connection with her arrest at the Lawrence General Hospital on June 30, 2012. Before the court are Motion of the Defendant, Michael Fornesi, to Dismiss the Plaintiff's Complaint [#9], Defendant Neil Perocchi's Motion to Dismiss [#16], and Defendant Lawrence Police Department's motion to dismiss [#18]. For the following reasons, the motions of Defendants Perocchi and Fornesi are ALLOWED IN PART and DENIED IN PART, and the motion of Defendant Lawrence Police Department is ALLOWED.

II.     Alleged Facts

In her complaint, Winfield alleges the following facts.[1]  On the morning of June 14, 2012, Winfield was unable to wake her husband.  Compl. ¶ 7.  She called 911 and an ambulance arrived and transported her husband to Lawrence General Hospital in Lawrence, Massachusetts (the "Hospital").  Id.  Doctors told Winfield that her husband was in critical condition.  Id.  Winfield's husband remained in the Hospital's Intensive Care Unit for two weeks.  Id. ¶ 8.  Winfield was frequently at the Hospital during this time.  Id. ¶ 9.

Winfield alleges that on June 30, 2014, she was visiting her husband who had awoken from a coma.  Id. ¶ 14.  That evening, a man with a stethoscope entered the room and listened to her husband's chest.  Id. ¶ 16.  Winfield asked the man if he was a doctor, and he responded that he did not have time to talk to her.  Id.  The man used the stethoscope to listen to Winfield's husband's lungs and then left the room.  Id.

Winfield asserts further that she later left the room to take a walk.  Id. ¶ 17.  Near the nurses' station, she encountered the man with the stethoscope who had previously entered her husband's room, and she asked the man if he was the replacement for the infectious disease specialist.  Id. ¶ 18.  Winfield had previously requested that the infectious disease specialist assigned to her husband be replaced because she had only been able to speak to the specialist on one occasion during a sixteen-day period.  Id. ¶¶ 12-13.  The man again brushed Winfield off, at which point a verbal altercation took place.  Id. ¶ 18.  Winfield asked the man, "what kind of a doctor are you?" and "[t]he man replied with an 'f' profanity."  Id.  After "being speechless for a few seconds," Winfield told the man to "go to . . . !"  Id.  This altercation occurred sometime

---

[1] For purposes of a motion to dismiss, the court accepts as true the factual allegations that Winfield has pleaded in her complaint.  See Shaner v. Chase Bank USA, 587 F.3d 488, 490 (1st Cir. 2009).

between 8:30 p.m. and 9:00 p.m.  See id. ¶ 16.

According to the complaint, Winfield then told a nurse that she was going down to the lobby. Id. ¶ 19.  When she reached the elevator, she heard a call on the intercom for security to report to the floor she was on.  Id. ¶¶ 20, 14.  When Winfield reached the lobby, three security guards confronted her.[2]  Id. ¶ 20.  The guards asked her to leave the hospital.  Id.  Winfield told them that "there was nothing going on and that the call resulted from the behavior of the person [that she] believed was a doctor."  Id.  One of the guards "became very aggressive and threatening to [her]."  Id.  Winfield informed the security guards that she had a meeting with the nurse supervisor and needed to return to the fourth floor.  Id. ¶ 21.  When Winfield stepped onto the elevator to go to the fourth floor, "the men became more aggressive."  Id.  When Winfield returned to the fourth floor, she met with the nurse supervisor and another person from the hospital.  Id.

Winfield alleges that around 9:30 p.m., she started to leave the Hospital for the evening. Id. ¶ 22.  On her way out, she stopped at a security booth located at the front of the Hospital and asked to speak to a security supervisor to report the behavior of the security guards.  Id.  A man at the security desk told Winfield that there was no security supervisor.  Id.  Winfield then walked over to the emergency desk and asked to speak to a hospital supervisor.  Id.  A person at the emergency desk told Winfield to take a seat while she called the hospital supervisor.  Id.

Winfield asserts that while she was waiting for the hospital supervisor, the front desk attendant told her that the security guards were outside and wanted to speak with her.[3]  Id. at 23.

---

[2] Although Defendant Fornesi is referred to by name only twice in the complaint, after considering Winfield's allegations as a whole, the court reads Winfield's complaint as alleging that Defendant Fornesi was one of these three security guards.

[3] It is unclear whether the front desk attendant is the same man that she spoke with at the security desk located at the front of the Hospital.

Winfield walked outside and saw the guards.  Id.  Winfield stood at a distance from the guards.  Id.  Within seconds, Defendant Perocchi "appeared from nowhere and stood close to [her] on the left."  Id.  Winfield asked Perocchi whether he was the head of security.  Id.  Perocchi stated that he was.  Id.  Winfield then attempted to explain why she wanted to speak with someone, but Perocchi told her that he already knew everything and that she needed to leave.  Id.  Winfield told Perocchi that she would need to call her daughter or a cab.  Id.  Perocchi then "grabbed the Plaintiff's hands violently, spun the Plaintiff around, and put the Plaintiff's wrists in handcuffs."  Id. ¶ 24.  While handcuffed outside the hospital, Perocchi "started to involve the crowd that had been gathering outside the emergency door by saying 'watch, watch, she's trying to kick – she's a kicker.'"  Id. ¶ 25.

Winfield alleges that Perocchi communicated with the police via radio.  Id. ¶ 26.  Approximately twenty or thirty minutes later, a police cruiser arrived and Perocchi placed Winfield inside.  Id.  At the police station, Perocchi was present along with a desk officer who questioned Winfield.  Id. ¶ 27. Perocchi ordered Winfield to remove her wedding ring.  Id.  Winfield was placed in a cell, and after she was released, officers informed her that they did not have her wedding ring.  Id.

According to the complaint, on July 3, 2012, Winfield appeared at the Lawrence District Court, at which time the charges against her were dropped.  Id. at 28.  That same day, Winfield stopped by the Lawrence Police Department to inquire about her wedding ring.  Id.  At the police station, she spoke to a sergeant, who asked Winfield if Perocchi had identified himself and what color uniform he had been wearing.  Id.  Winfield told the sergeant that Perocchi had not identified himself, but that he had been wearing a blue uniform.  Id.  The sergeant told Winfield that Perocchi was a Lawrence police officer who works detail for the hospital.  Id.  He also told

her that he did not know what happened to her wedding ring.  Id.  Following this meeting, Winfield made several more attempts to retrieve her wedding ring from the Lawrence Police Department.  Id.  Each time, the Department told her that it had not found the ring.  Id.

Based on these allegations, Winfield brings six state and federal law causes of action against the Defendants.

III.   Discussion

A.   *Standard*

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court presents the facts as they are related in Plaintiff's amended complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)). Where, as here, a plaintiff proceeds pro se, that plaintiff "is entitled to liberal construction of her allegations, no matter how inartfully pled."  Ashley v. New York State Office of Children and Family Servs., No. 13–30197–KPN, 2014 WL 3767382, at *1 (D. Mass. June 14, 2014) (quotation marks and citation omitted).  To survive a motion to dismiss, a complaint must include factual allegations that, taken as true, demonstrate a plausible claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Although a complaint "does not need detailed factual allegations," the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

B.  *Claims Against the Lawrence Police Department*

Winfield alleges that the Lawrence Police Department was grossly negligent and/or deliberately indifferent in training and supervising its officers. Winfield contends that Defendants Perocchi and Fornesi (collectively the "Individual Defendants") engaged in the alleged conduct causing her injury and that the Department failed to review the matter or locate her wedding ring. Winfield does not specify whether she brings this claim under state or federal law.

As an initial matter, Winfield may not bring her claims against the Lawrence Police Department directly, but may only bring these claims, if at all, against the municipality, i.e., the City of Lawrence. See Henschel v. Worcestor Police Dep't, 445 F.2d 624, 624 (1st Cir. 1971) (explaining that "the Police Department [is not] a suable entity"); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989) ("[T]he [Boston] Police Department is not an independent legal entity. It is a department of the City of Boston."). The court will treat Winfield's claims against the Lawrence Police Department as claims against the City of Lawrence. See Stratton, 731 F. Supp. at 46.

Under federal law, for liability to attach to a municipality under 42 U.S.C. § 1983, a plaintiff must allege that her injuries were caused by an official policy or custom of the municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Apart from Winfield's conclusory allegations that the Department was grossly negligent in training and supervising officers, and her broad contention that the Department "is notorious for abuse of power, violation [sic] of individual right [sic], and brutality," Compl. ¶ 33, Winfield does not provide any factual allegations suggesting the existence of any such policy or custom. Accordingly, any claim against the City of Lawrence under § 1983 must fail.

Under state law, a municipality cannot be sued under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I. See Kelley v. LaForce, 288 F.3d 1, 4 (1st Cir. 2002). To reach the City of Lawrence, Winfield must therefore proceed by way of the Massachusetts Tort Claims Act ("MTCA"). Under the MTCA, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258, § 2. While the MCTA excludes a public employer from liability for any claim arising out of an intentional tort, see id. § 10(c), a plaintiff may pursue negligent training and supervision claims against a municipality even where such claims stem from an intentional tort committed by a public employee. See Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 95-98 (D. Mass. 2001). Winfield's state law claim against the City, however, fails because she does not provide any factual allegations suggesting that the Lawrence Police Department was negligent in training and supervising its officers.

  C. *Intentional Infliction of Emotional Distress Claims*

    (a) Defendant Fornesi

Winfield alleges that Fornesi is liable for intentional infliction of emotional distress. This claim largely rests on her allegations that she was arrested by Defendant Perocchi and then made to stand outside while Fornesi and Perocchi "entertained the crowd by getting the crowd of bystanders to make jokes and getting people to laugh solely to humiliate" her. See Compl. ¶ 34. Winfield alleges that Defendant Perocchi "started to involve the crowd that had been gathering outside the emergency door by saying 'watch, watch, she's trying to kick – she's a kicker.'" Id. ¶ 25. In her claim, Winfield also alleges that she was intentionally humiliated when "the defendants force[d] [her] to remove her wedding ring" at the police station. See id. ¶ 34.

7

Under Massachusetts law, liability may attach if Winfield can show that (1) Fornesi intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, "beyond all possible bounds of decency" and "utterly intolerable in a civilized community"; (3) that Fornesi's actions caused Winfield's distress; and (4) that Winfield's emotional distress was severe and of a nature "that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976) (quotation marks and citations omitted). Although physical harm is not a necessary element of an intentional infliction of emotional distress claim, "[t]he standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

Here, Winfield's allegations as they pertain to Fornesi are thin. The complaint alleges that it was Defendant Perocchi who (1) made the alleged unlawful arrest, (2) involved the crowd by saying that "she's a kicker," and (3) forced her to remove her wedding ring at the police station. The allegations against Fornesi, therefore, consist only of the general allegation that "[t]he defendants used the occasion to entertain the crowd . . . to humiliate her," Compl. ¶ 34, and the allegation that Fornesi conspired with Perocchi to violate her constitutional rights. Without greater detail as to any actions taken by Fornesi that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987), the complaint fails to state an intentional infliction of emotional distress claim against him.

(b)     Defendant Perocchi

Winfield's intentional infliction of emotional distress claim against Perocchi is insufficient because Winfield fails to plead that she suffered severe distress. The only reference to Winfield's distress in the complaint is found in paragraph 34, in which she alleges that the Individual Defendants "acted . . . to inflict extreme emotional distress, anguish, and trauma" to her. Although a plaintiff's burden to plead each element of a cause of action is not high at the motion to dismiss stage, mere recitations of the elements of a cause of action supported only by conclusory statements are insufficient to "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555; see Doyle, 103 F.3d at 195 (finding that the plaintiff did not "even attempt[] to plead severe distress") (quotation marks and citation omitted). Importantly, Winfield's allegation merely states that the Individual Defendants acted to inflict severe distress, not that she actually suffered severe distress as a result of their alleged actions.

D.     *Claims Based on Alleged Violations of Constitutional Rights*

Winfield's claims under the First, Fourth, Fifth, and Fourteenth Amendments, and her civil rights conspiracy claims, arise under § 1983. "Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." Sanchez v. Pereira–Castillo, 590 F.3d 31, 41 (1st Cir. 2009). Winfield charges Perocchi with false arrest, civil rights conspiracy, and a First Amendment violation, and she charges Fornesi with civil rights conspiracy and a First Amendment violation.

As an initial matter, Winfield's First Amendment claim against Fornesi fails because only government action can result in the violation of an individual's First Amendment rights. See Hovan v. United Bhd. of Carpenters and Joiners, 704 F.2d 641, 642 (1st Cir. 1983). Winfield does not allege that Fornesi's conduct constituted government action. Winfield's First

9

Amendment claim against Fornesi must, therefore, fail.

Winfield's only remaining claim against Fornesi is her civil rights conspiracy claim. This claim is based on Winfield's allegations that Defendant Perocchi falsely arrested her to prevent her from filing a complaint against Fornesi and the other security guards.[4] Defendants, however, argue that probable cause existed at the time that Perocchi arrested Winfield and thus Winfield has not alleged the deprivation of a constitutional right.

Defendants point to Winfield's complaint, in which she admits that as a consequence of her altercation with a hospital staff member, security officers, including Fornesi, asked her to leave the premises, which she refused to do. Under Massachusetts law, these actions may have resulted in a trespass, see Mass. Gen. Laws ch. 266, § 120 (trespass occurs whenever a person "without right enters or remains in . . . [a private building] . . . after having been forbidden so to do by the person who has lawful control of said premises"), and, if reported to Perocchi, may have constituted probable cause.

The court reads the complaint as arguably alleging that Perocchi did not have probable cause to arrest Winfield, that he effectuated Winfield's arrest to prevent her from filing a complaint against Fornesi and the other security guards, and that Fornesi conspired with him to effectuate the arrest. The court cannot determine from the allegations in the complaint whether Winfield's actions that may have constituted a trespass were reported to Perocchi prior to her arrest. Without more detail as to what was reported to Perocchi, the court cannot determine whether Perocchi had probable cause to arrest Winfield at the time of the arrest. Whether

---

[4] Although Winfield pleads claims based on unlawful arrest and false imprisonment in separate counts, both claims plead violations of the Fourth Amendment's proscription against unreasonable searches and seizures. The court, therefore, "view[s] the allegations as stating a single claim for violation of [Winfield's] Fourth Amendment right to be free from an unreasonable seizure," Pena-Borrero v. Estremeda, 365 F.3d 7, 12 n.8 (1st Cir. 2004).

probable cause existed "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004); see Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) ("It is objectively reasonable for officers to seek an arrest warrant 'so long as the presence of probable cause is at least arguable.'" (quoting Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991))).

Because Winfield's remaining civil rights conspiracy and First Amendment claims hinge on whether Winfield's arrest was unlawful, the court finds the missing information as to what was reported to Perocchi pivotal to analyzing these claims. For this reason, the court will allow limited discovery as to this issue and, therefore, DENIES the motions to dismiss as they pertain to Winfield's civil rights conspiracy claims against Fornesi and Perocchi and her constitutional claims against Perocchi.[5]

IV.     Conclusion

In accordance with the above, Defendant Neil Perocchi's Motion to Dismiss [#16] is ALLOWED IN PART and DENIED IN PART, Motion of the Defendant, Michael Fornesi, to Dismiss the Plaintiff's Complaint [#9] is ALLOWED IN PART and DENIED IN PART, and Defendant Lawrence Police Department's motion to dismiss [#18] is ALLOWED. Counts V and VI are hereby dismissed in their entirety, and Count III is dismissed as to Defendant Fornesi

---

[5] Perocchi also raises a qualified immunity defense. "'Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Taylor v. Barkes, __ U.S. __, 135 S. Ct. 2042, 2044 (2015) (quotation marks and citation omitted). In analyzing this defense, the court proceeds as follows: first, it must determine whether Winfield has alleged a deprivation of an actual constitutional right; and, second, it must determine whether the right was clearly established at the time of the alleged violation. Abreu-Guzman, 241 F.3d at 73. "Only if these two questions are answered in the affirmative does the court address . . . whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established right." Id. Accordingly, the court defers review of Perocchi's qualified immunity defense at this time.

only.

    IT IS SO ORDERED.

July 22, 2015                                                /s/ Indira Talwani
                                                                      United States District Judge